# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS LINER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3698** |
| **TERMINIX PEST CONTROL, INC.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Terminix Pest Control, Inc.'s Motion to Dismiss (Doc. 18). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises out of Plaintiff Louis Liner's termination from his employment with Defendant Terminix Pest Control, Inc. In August 2021, Defendant issued a notice to all employees that they must receive the COVID-19 vaccine as an ongoing condition of employment. This notice had exceptions, including "a disability verified by a physician that prevents you from taking the vaccine."[1] Plaintiff's Amended Complaint alleges that he told Defendant he did not want to receive the vaccine because it would violate his religious beliefs to receive a vaccine derived from aborted fetal cell lines.[2] Additionally, Plaintiff provided paperwork evidencing that he "had a disability stemming from a documented family history of blood clotting and myocarditis" that allegedly preventing him from safely receiving the vaccine.[3] Plaintiff alleges that

---

[1] Doc. 16-1 at 1.
[2] Doc. 16 at 7.
[3] *Id.*

1

Defendant refused his requested accommodations without explaining how granting him an accommodation would result in undue hardship to the business.[4] Plaintiff refused to receive the COVID-19 vaccination and was fired on September 14, 2021.[5]

On March 17, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). He received a Notice of Right to Sue Letter on August 2, 2022. Plaintiff filed suit in this Court on October 6, 2022, alleging violations of the Emergency Use Authorization Provision,[6] Title VII,[7] the ADA,[8] and the Louisiana Employment Discrimination Law ("LEDL").[9]

This Court granted Defendant's first Motion to Dismiss in part, holding that Plaintiff did not adequately plead his ADA and state law claims. This Court denied Defendant's Motion to Dismiss as to Plaintiff's Title VII claim. Plaintiff subsequently filed an Amended Complaint pursuant to the Court's Order and Reasons, bringing various claims under the ADA, Title VII, asserting that the Louisiana at-will employment doctrine is preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), wrongful termination, retaliation, breach of contract, and violations of the LEDL. Now before the Court is Defendant's second Motion to Dismiss Plaintiff's Claims with Prejudice. Plaintiff opposes.[10]

---

[4] *Id.* at 9.
[5] *Id.*
[6] 21 U.S.C. § 360bbb-3.
[7] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.
[8] 42 U.S.C. § 12101.
[9] LA. REV. STAT. § 23:301.
[10] Doc. 21.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[11] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[12] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[13] The Court need not, however, accept as true legal conclusions couched as factual allegations.[14]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[15] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[16] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[17]

## LAW AND ANALYSIS

Defendant argues that Plaintiff fails to establish any viable cause of action under the ADA and under state law. Plaintiff opposes, stating that he did adequately plead his claims. Plaintiff also argues that the Court has original jurisdiction over his state law claims because the PREP Act preempts Louisiana's at-will employment doctrine. The Court will address each contention individually.

---

[11] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[12] Id.
[13] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[14] Iqbal, 556 U.S. at 667.
[15] Id.
[16] Id. at 678 (quoting Twombly, 550 U.S. at 555).
[17] Lormand, 565 F.3d at 255–57.

a. *American With Disabilities Act*

Plaintiff asserts various claims under the ADA, namely (1) "Disability and Failure to Accommodate," (2) "Unlawful Medical Examination or Inquiry," and (3) "Regarded Disabled."[18] Defendant argues that Plaintiff did not plausibly allege a violation of the ADA under any theory.

"The ADA prohibits an employer from 'discriminat[ing]' against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment."[19] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."[20] The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[21] Plaintiff alleges he is disabled under subsections (A) and (C) because he has a physical impairment that substantially limits his ability to work anywhere that requires a COVID-19 vaccine, and because Defendant regarded him as having a physical impairment.

As Plaintiff's Count Two "Disability and Failure to Accommodate" and Count Four "Regarded Disabled" claims both require Plaintiff to prove he has a disability as defined by the ADA, the Court will address these claims first.

---

[18] Doc. 16.

[19] Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017) (quoting Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original)).

[20] *Id.* (quoting E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)).

[21] 42 U.S.C. § 12102(a).

i.    *Disability and Failure to Accommodate*

In Count Two, Plaintiff alleges that he "does not possess the physical ability to safely receive an [Emergency Use Authorization] Covid injection" because of his family history of blood clotting and myocarditis.[22] Plaintiff proceeds to explain that this results in a "physical impairment that substantially limits the major life activity of 'working' in any job where the employer requires its employees to receive an [Emergency Use Authorization] Covid injection."[23] A disability as defined by the ADA is a physical impairment that substantially limits a major life activity. Major life activities include working, seeing, hearing, speaking, and breathing.[24] "Substantially limits" in the context of working as a major life activity "means [that the employee is] significantly restricted in [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[25] "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."[26]

The Court has difficulty ascertaining Plaintiff's alleged disability. Plaintiff claims that his disability is a family history of blood clotting and myocarditis, and then explains that he is physically unable to receive the COVID-19 vaccine due to this family history, which, in turn precludes him from working for any employer that requires a COVID-19 vaccination. Plaintiff alleges that his doctor recommended against getting the vaccine, and further,

---

[22] Doc. 16 at 11.
[23] *Id.*
[24] 42 U.S.C. § 12102(2)(A).
[25] Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(j)(3)(i)).
[26] *Id.*

that he conducted his own research regarding the side effects on vaccine recipients' hearts.[27]

In its previous Order and Reasons, the Court held that the inability to receive certain medications and vaccinations is not a major life activity within the ADA.[28] Plaintiff's argument now appears to have morphed into a more attenuated chain of causation wherein his family history of blood clotting and myocarditis renders him unable to take certain medications and vaccines, which then prohibits him from working for any employer whose company policy requires those medications and vaccinations. While the United States Supreme Court has held that a degenerative circulatory disorder that substantially limited a golfer's ability to walk constituted a disability under the ADA, Plaintiff's assertion that his family history of blood clots and myocarditis impacts his ability to receive a vaccine is much different.[29]  Plaintiff does not allege that he himself has blood clotting or myocarditis. Further, his Amended Complaint does not explain how his family history of blood clotting or myocarditis directly affects his ability to work in any job, inhibits his movement, or causes him any pain. The intervening event of deciding not to receive a COVID-19 vaccine is what renders Plaintiff unable to do his job, not his family history of blood clotting and myocarditis.[30] The Court does not find Plaintiff's workaround compelling and reiterates that it does not consider

---

[27] Doc. 16 at 10–11.

[28] Doc. 15 at 6.

[29] PGA Tour, Inc. v. Martin, 532 U.S. 661, 668 (2001) ("[The plaintiff] is also an individual with a disability as defined in the [ADA]. . . . Since birth he has been afflicted with . . . a degenerative circulatory disorder that obstructs the flow of blood from his right leg back to his heart. The disease is progressive; it causes severe pain and has atrophied his right leg. During the latter part of his college career, because of the progress of the disease, [plaintiff] could no longer walk an 18-hole golf course.").

[30] Speaks v. Health Sys. Mgmt., Inc., No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice . . . that, while hers to make in this context, cannot be considered an impairment under the ADA.").

taking certain medications and vaccines a major life activity akin to seeing, hearing, speaking, or breathing.[31] As the Court finds that Plaintiff has not adequately pleaded a disability under the ADA, the first element of a failure to accommodate claim, Plaintiff's second claim is dismissed.[32]

### ii.   *Regarded Disabled*

Plaintiff's fourth claim alleges Defendant regarded him as disabled because (1) "he had the medical status of being unvaccinated," and (2) Defendant considered him to be "at a higher risk of becoming infected with and transmitting COVID-19."[33] Defendant moves to dismiss this claim arguing that the Amended Complaint fails to show that Defendant linked Plaintiff's refusal to receive the vaccine to a physical or mental impairment, and acted in a discriminatory manner based on that perceived impairment.[34]

To meet the standard of being a person regarded as having a disability under 29 C.F.R. § 1630.2(iii), "a plaintiff must show either that '(1) a covered entity mistakenly believes that a person has a physical impairment that

---

[31] Plaintiff filed a Supplemental Memorandum with this Court, asking it to adopt the holding of a Pennsylvania District Court that "[m]edical conditions that prevented Plaintiffs from receiving the Covid-19 vaccine fit within [the ADA's] definition of impairment." Doc. 24 (citing Doe(s) v. Pittsburgh Reg. Transit, No. 2:22-cv-01736, 2023 WL 4867850 (W.D. Penn. July 31, 2023)). *Doe(s)* is not binding on this Court. This Court finds the facts of the disability in *Doe(s)* distinguishable and does not find its rationale otherwise persuasive. In *Doe(s)*, the court analyzed the severity of plaintiffs' anaphylaxis, finding that a "permanent, chronic, and severe allergy" can be a "physical or mental impairment" preventing plaintiffs from getting the COVID-19 vaccine. The court then concludes, as does Plaintiff, that the plaintiffs sufficiently pled their disability, without bridging the logical gap and explaining how the medical condition itself prevents Plaintiffs from the major life activity of working. *See Doe(s)*, 2023 WL 4867850, at *6 ("[T]he allegations . . . support a reasonable inference that the Plaintiffs were not able to get the Covid-9 [vaccine] because of a 'physical or mental impairment.'").

[32] Bright v. Martin, No. 22-30767, 2023 WL 4044437, at *1 (5th Cir. June 15, 2023) ("To prevail on a failure-to-accommodate claim, the plaintiff must show '(1) [he] is a "qualified individual with a disability;"(2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'").

[33] Doc. 16 at 18, 20.

[34] Doc. 18-2 at 5–6.

substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'"[35] Both of these "require that the plaintiff demonstrate that the employer actually 'entertain[ed] misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'"[36]

The Court finds that Defendant did not regard Plaintiff as disabled by instituting a blanket vaccination policy. Defendant circulated an interoffice memo that required *all* of its employees to abide by the new vaccination policy.[37] By doing so, Defendant regarded Plaintiff, and all other employees, as being required to comply with its company policy. Various other courts have dismissed ADA discrimination suits wherein Plaintiffs alleged that their employers regarded them as disabled by enforcing COVID-19 vaccination policies.[38] One court noted that misclassifying an employee as having a

---

[35] Kemp v. Holder, 610 F.3d 231, 237 (5th Cir. 2010) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999) (overturned on other grounds).

[36] Id. (quoting *Sutton*, 527 U.S. at 489).

[37] Id.

[38] *See* Sharikov v. Philips Med. Sys. MR, Inc., No. 122-326, 2023 WL 2390360, at *8 (N.D.N.Y. Mar. 7, 2023) ("The allegation that Defendant perceived Plaintiff as *potentially* infectious fails to plausibly allege a claim that the . . . Defendant regarded Plaintiff as having an impairment); *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA"); Gallo v. Wash. Nat'ls Baseball Club, LLC, 2023 WL 2455678 (D.D.C. Mar. 10, 2023) ("The 'regarded as having' prong of the ADA's definition of disability 'does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.'"); Applegate v. St. Vincent Health, Inc., 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' unvaccinated status cannot plausibly support a claim that Defendants regarded them as disabled under the ADA."); Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023); Jorgenson v. Conduent Transp. Sols., Inc., No. 22-cv-1648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (dismissing a plaintiff's "regarded as" ADA claim because requiring employees to attest to their vaccination status "does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); Earl v. Good

8

disability due to a failure to comply with a vaccination policy would "require inferring that [the employer] misclassified all of its . . . employees as having a disability. Such an inference is not reasonable."[39] Accordingly, Plaintiff has not plausibly alleged that Defendant regarded him as having a disability. Plaintiff's third claim that his employment was terminated because he was regarded as disabled also fails.

### iii.   Unlawful Medical Examination

Plaintiff's third claim under the ADA for an unlawful medical inquiry alleges that Defendant made various unlawful medical inquiries, namely (1) inquiring into Plaintiff's vaccination status, and (2) requiring Plaintiff to submit proof he had been vaccinated. As the Fifth Circuit has held that a plaintiff "need not assert that he or she has a disability to contest an allegedly improper medical inquiry or medical examination," Plaintiff's medical inquiry claims under the ADA are not precluded by his failure to adequately plead a disability under the ADA.[40]

Under Title I of the ADA, employers cannot require medical examinations or make medical inquiries into the potential existence of an employee's disability or to the nature or severity of an employee's disability.[41] The provision that Plaintiff is suing under, 42 U.S.C. § 12112(d)(4)(A), states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination

---

Samaritan Hosp. of Suffern, No. 20-cv-3119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (finding that the plaintiff "failed to plausibly allege that [his employer] perceived him to be disabled based on his potential to infect patients with COVID-19" because the "perception of infectiousness is not the same as perceived disability").

[39] *Shklyar*, 616 F. Supp. 3d at 926.

[40] Taylor v. City of Shreveport, 798 F.3d 276, 284 (5th Cir. 2015).

[41] 42 U.S.C.A. § 12112.

or inquiry is shown to be job-related and consistent with business necessity.

The ADA definition of a disability, discussed above, includes "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." To establish a claim for an unlawful medical examination or inquiry under Section 12112(d), a claimant must show (1) that their "employer obtained the medical information that was disclosed through [a medical examination] or disability-related inquiry;"[42] and (2) that he "suffered a tangible injury due to the disclosure of the protected medical information."[43]

Inquiring into whether Plaintiff was vaccinated and requiring him to submit proof that he was vaccinated do not fit this statutory definition. Defendant was not inquiring into the nature of severity of a disability or inquiring whether Plaintiff was a person with a disability. The Court notes that while the Equal Employment Opportunity Commission's ("EEOC") webpage is not binding law, it finds the EEOC's guidance instructive. The EEOC specifically stated that inquiring into COVID-19 vaccination status is not a medical inquiry under the ADA.[44] This type of conduct does not implicate

---

[42] Franklin v. City of Slidell, 936 F. Supp. 2d 691, 711 (E.D. La. 2013) (citing Dean v. City of New Orleans, No. 11-2209, 2012 WL 2564954, at *20 (E.D. La. July 2, 2012), aff'd, 544 F. App'x 353 (5th Cir. 2013).

[43] Id. (citing Dean, 2012 WL 2564954, at *21).

[44] U.S. Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (last accessed July 18, 2023, 11:42 AM), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. The EEOC specifically stated that "[w]hen an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply."

any disability and is not prohibited by the ADA. Additionally, many other courts have held that inquiries into vaccination status and requiring proof of vaccination status are not medical inquiries under the ADA.[45] This Court agrees. Therefore, Plaintiff's medical inquiry claims under the ADA as to the inquiries into his vaccination status must be dismissed.

> b. *Preemption of Plaintiff's State Law Claims*

Plaintiff next argues the Public Readiness and Emergency Preparedness Act (the "PREP Act") preempts the Louisiana at-will employment doctrine and gives this Court original jurisdiction over all his state law claims. Essentially, Plaintiff argues that his state law claims "arise under" federal law.[46] "The notion that state-law claims can 'arise under' federal law is not intuitive. State questions are not federal questions."[47]

There is a narrow exception to this rule, however. "[C]omplete preemption is an exception to the well-pleaded complaint rule."[48] "The

---

[45] Balow v. Olmsted Med. Ctr., No. CV 22-1668 ADM/JFD, 2023 WL 2776028, at *6 (D. Minn. Apr. 4, 2023) (holding that a vaccine is not a procedure that seeks information about Plaintiffs' health and is not an inquiry into whether Plaintiffs have a disability); Bobnar v. AstraZeneca, No. 1:22-CV-02258, 2023 WL 3340466, at *4 (N.D. Ohio May 9, 2023) (holding that inquiries into an employee's vaccination status does not constitute an unlawful medical inquiry and stating that "[t]he EEOC expressly advised that an employer's COVID-19 vaccination status is not a prohibited medical inquiry under the ADA."); Friend v. AstraZeneca Pharms. LP, No. CV SAG-22-03308, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) (holding that "an inquiry about vaccination status does not implicate any disability"); Bearbower v. Olmsted Med. Ctr., No. CV 22-2459 ADM/JFD, 2023 WL 2776029, at *6 (D. Minn. Apr. 4, 2023); Kehren v. Olmsted Med. Ctr., No. CV 22-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023); Tipcke v. Olmsted Med. Ctr., No. CV 22-2470 ADM/JFD, 2023 WL 2776098, at *6 (D. Minn. Apr. 4, 2023); Aronson v. Olmsted Med. Ctr., No. CV 22-1594 ADM/JFD, 2023 WL 2776095, at *6 (D. Minn. Apr. 4, 2023) ("[T]his requirement is not an unlawful inquiry under the ADA because inquiring about an employee's vaccination status is not likely to elicit information about a disability."); Librandi v. Alexion Pharms., Inc., No. 3:22CV1126(MPS), 2023 WL 3993741, at *9 (D. Conn. June 14, 2023).

[46] 28 U.S.C. § 1331.

[47] Manyweather v. Woodlawn Manor, Inc., 40 F.4th 237, 242 (5th Cir. 2022).

[48] Rio Grande Underwriters, Inc. v. Pitts Farms, Inc., 276 F.3d 683, 685 (5th Cir. 2001) (citing Hart v. Bayer Corp., 199 F.3d 239, 244 (5th Cir. 2000)).

'complete preemption doctrine' provides that the preemptive force of a federal statute can be 'so extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"[49] "If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."[50] Therefore, "[i]f a federal law is found to completely preempt a field of state law, the state-law claims in the plaintiff's complaint will be recharacterized as stating a federal cause of action."[51]

To trigger complete preemption in the Fifth Circuit, Plaintiff must show that "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.'"[52]

The statute in question is the PREP Act. The Fifth Circuit has described the PREP Act as "shield[ing] covered persons, 'such as pharmacies and drug manufacturers,' from suits and liability 'during a public-health emergency.'"[53] "The PREP Act's liability shield extends only to the administration . . . or the use of those covered countermeasures," such as "vaccines and treatments."[54]

---

[49] Elliot v. Care Inn of Edna LLC, No. 3:20-CV-3185-S, 2021 WL 2688600, at *3 (N.D. Tex. June 30, 2021) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 389 (1987)).
[50] *Caterpillar*, 482 U.S. at 393 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983)); *see also* Ben. Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).
[51] *Rio Grande*, 276 F.3d at 685 (quoting *Hart*, 199 F.3d at 244).
[52] *Elliot*, 2021 WL 2688600, at *3 (quoting Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008)).
[53] *Manyweather*, 40 F.4th at 243 (quoting Est. of Maglioli v. All. HC Holdings, LLC, 16 F.4th 393, 400 (3d Cir. 2021)).
[54] *Id.* (quoting 42 U.S.C. § 247d-6d(a)(1))(internal quotations omitted).

12

"The PREP Act is, at its core, an immunity statute. It does not create a federal cause of action or any rights, duties, or obligations."[55] Under different facts, the Fifth Circuit has held that the PREP Act fails to satisfy this test.[56]

As to the first element, the PREP Act does not provide a cause of action that "replaces and protects the analogous area of state law."[57] It creates a narrow cause of action for willful misconduct.[58] Plaintiff asserts claims for wrongful termination, retaliation, and breach of contract, which are not subsumed and replaced by a cause of action for willful misconduct. Nor is the compensation fund created by the PREP Act a cause of action.[59] As a result, Plaintiff is unable to identify a cause of action that replaces his asserted state law claims.[60]

---

[55] *Elliot*, 2021 WL 2688600, at *3.

[56] *Id.* ("The PREP Act does not completely preempt state law negligence claims for COVID-19-related injuries, as it fails to satisfy all three prongs of the Fifth Circuit's test for complete preemption."); *Manyweather*, 40 F.4th at 242 ("We already have decided that the PREP Act does not preempt state-law negligence claims."); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("The Act does not completely preempt Mitchell's state-law negligence claims."). These Fifth Circuit cases address the PREP Act's preemption as it pertains to the preemption of state law negligence claims, however, the discussion of the elements of complete preemption is useful regardless.

[57] *Johnson*, 214 F.3d at 632.

[58] 42 U.S.C. § 247d-6e(d)(1) (the statute defines willful misconduct as "an act or omission that is taken-- (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."). Plaintiff does not appear to allege a willful misconduct claim. To the extent the Court may construe his allegations as doing so, he does not adequately plead the elements. The willful misconduct exception is procedurally narrow and requires plaintiffs to satisfy strict standards of pleading and proof, as well as showing clear and convincing evidence of "willful misconduct which caused death or serious physical injury." § 247d-6d(c)(3). Plaintiff cannot meet these strict requirements.

[59] *Manyweather*, 40 F.4th at 242 (5th Cir. 2022) (stating that even if the PREP Act's compensation fund was a cause of action, which it was not, Congress denied the courts power to review how the Secretary administers the compensation fun, which necessarily precludes complete preemption); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("To begin, a 'compensation fund is not a cause of action.'").

[60] Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 587 (5th Cir. 2022) ("As the Third Circuit noted, 'neither the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund.'").

Even assuming that the PREP Act does create a cause of action, the other elements are not met. The second element, that the act specifically grants federal courts jurisdiction to enforce the right, is also not met. The PREP Act specifically gives jurisdiction to Secretary of the Department of Health and Human Services to administer the compensation fund.[61] Claims for willful misconduct, when permitted, can be brought in the United States District Court for the District of Columbia after the plaintiff exhausts all administrative remedies.[62] "Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court."[63] Plaintiff cannot show that the PREP Act satisfies the second prong.

Finally, there is not a clear congressional intent that the prescribed remedies be exclusive. The PREP Act does not create a general cause of action, or specifically grant federal courts jurisdiction to adjudicate such actions, evincing a lack of congressional intent that the remedies provided be exclusive. Various other courts have similarly held that the PREP Act fails to completely preempt state law, and this Court agrees.[64] As a result, the Court does not have original jurisdiction over Plaintiff's state law wrongful termination, retaliation, and breach of contract claims. This Court's jurisdiction over Plaintiff's state law claims is supplemental.

---

[61] 42 U.S.C. §§ 247d-6e(a), 247d-6e(b).

[62] *Elliot*, 2021 WL 2688600, at *4.

[63] *Id.*

[64] *Id.* (citing *Schuster*, 493 F. Supp. 3d at 536-38; Brannon v. J. Ori, LLC, 2:21-CV-00058-JRG-RSP, 2021 WL 2339196, at *2 (E.D. Tex. June 8, 2021); Gibbs *ex rel.* Estate of Velasquez v. Se. SNF LLC, SA-20-CV-01333-JKP-RBF, 2021 WL 1186626, at *3 (W.D. Tex. Mar. 30, 2021); Anson v. HCP Prairie Vill. KS OpCo LLC, No. 20-CV-2346 (DDC) (JPO), 2021 WL 308156, at *9–11 (D. Kan. Jan. 29, 2021); Estate of *Smith ex rel.* Smith v. The Bristol at Tampa Bay Rehab. & Nursing Ctr., No. 20-CV-2798 (T), 2021 WL 100376, at *1–2 (M.D. Fla. Jan. 12, 2021); Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 20-CV-1198, 2020 WL 6140474, at *7–8 (W.D. Pa. Oct. 16, 2020); Saldana v. Glenhaven Healthcare LLC, No. 20-CV-5631 (FMO) (MAA), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020); Estate of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d. 518, 528-33 (D.N.J. 2020)).

### c.  State Law Claims

Defendant next moves to dismiss Plaintiff's state law wrongful termination, retaliation,[65] breach of contract, and LEDL claims because Plaintiff fails to cite statutes creating these alleged exceptions to Louisiana's at-will employment doctrine. Plaintiff only responds as to its breach of contract claim, arguing that the Interoffice Memo was not itself an employment contract governed by employment at-will doctrine, but rather an ancillary contract "limited to that aspect of Plaintiff's employment."[66]

### i.  Wrongful Termination

Under Louisiana law, the default rule of employment at-will governs, and "an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge."[67] State and federal law, however, provide statutory exceptions to this default rule.[68] Plaintiff asserts that an applicable exception exists for employees "exercis[ing] a statutory right to refuse being injected with an investigational drug."[69] As Defendant notes,

---

[65] In its previous Order and Reasons, the Court dismissed Plaintiff's retaliation claim as it could not ascertain whether he was suing under federal or state employment law. Doc. 15 ("As the Court cannot ascertain under which law the Plaintiff is suing, and thus, what the requisite elements are, he did not state a claim upon which relief can be granted."). The Court granted Plaintiff leave to amend his complaint. Plaintiff failed to clarify whether he was suing under federal or state employment law. As Plaintiff grouped his retaliation claim with his other state law claims in his Amended Complaint and in his opposition to this Motion, the Court assumes that Plaintiff intended his retaliation claim to arise under state law and has treated it as such. Doc. 21 at 16 (listing and addressing wrongful termination, retaliation, and breach of contract together). To the extent Plaintiff may argue he attempted to plead retaliation under the ADA, it is dismissed for failure to plead the requisite elements of a retaliation claim under federal law.

[66] Doc. 21 at 16.

[67] Quebedeaux v. Dow Chem. Co., 820 So. 2d 542, 545 (La. 2002) (citing LA. CIV. CODE art. 2747; Williams v. Delta Haven, Inc., 426 So. 2d 637 (La. Ct. App. 2d Cir. 1982)).

[68] *Id.* (citing 42 U.S.C.A. § 2000e *et seq.* (prohibits discrimination in all aspects of employment based on race, religion, sex, color, or national origin); 42 U.S.C.A. § 1981 (prohibits discrimination based on race); LA. REV. STAT. § 23:301 *et seq.* (prohibits internal discrimination in terms or conditions of employment based on race, color, creed, religion, sex, national origin, disability, age, and sickle cell trait)).

[69] Doc. 16 at 24.

Plaintiff does not cite to any particular statute in Count VI that provides this alleged "right to refuse being injected with an investigational drug." The only alleged statutory right that Plaintiff cites in his Amended Petition is the PREP Act, which again "does not create a federal cause of action or any rights, duties, or obligations."[70] Thus, as the Court cannot ascertain under which statutory exception Plaintiff is suing, and thus, what the requisite elements are, Plaintiff has not stated a claim upon which relief can be granted as to his wrongful termination claim. To the extent that Plaintiff asserts that the PREP Act serves as an exception to Louisiana employment at-will doctrine, he has likewise failed to state a claim of wrongful termination upon which relief may be granted.

### ii. Retaliation

Plaintiff alleges in his Amended Complaint that he was "terminated in retaliation for engaging in the protected activity of exercising rights given to him pursuant to the federal statutes cited herein."[71] Defendant moves to dismiss this claim because Plaintiff fails to cite any statutory exception to Louisiana at-will employment doctrine.

Despite being given leave to amend his complaint to clarify under which law Plaintiff asserts his retaliation claim, he fails to clarify as to which state law his retaliation claim arises. Nevertheless, it appears Plaintiff may be asserting a claim under Louisiana Revised Statutes § 51:2256, which prohibits employers from conspiring to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by [Louisiana human rights or discrimination laws]."[72] The plain language of § 51:2256

---

[70] *Elliot*, 2021 WL 2688600, at *3.

[71] Doc. 16 at 25.

[72] LA. REV. STAT. § 51:2256. *See also* Goings v. Lopinto, No. 22-2549, 2023 WL 2709826, at *11 (E.D. La. Mar. 30, 2023).

prohibits conspiracies to retaliate against an employee who opposes unlawful practices under the LEDL or Louisiana Commission on Human Rights Act (LCHRA).[73] However, in Count VII of his Amended Complaint, Plaintiff fails to plead any facts demonstrating that two or more people conspired in the alleged retaliation. He further fails to assert that a provision of the LEDL or LCHRA was violated.[74] Thus, Plaintiff has failed to plead sufficient facts to state a § 51:2256 claim upon which relief may be granted. Because the Court cannot ascertain under which statutory exception Plaintiff is otherwise suing, and thus, what the requisite elements are, Plaintiff has not stated a claim of retaliation upon which relief can be granted.

### iii.   Breach of Contract

Plaintiff alleges that the Interoffice Memo issued by Defendant to Plaintiff sets forth the basis of a contract, which was breached when Defendant terminated Plaintiff's employment after he requested a medical exemption from the vaccine requirement. Defendant moves to dismiss this claim, arguing that the Interoffice Memo is an employment contract, which is governed by employment at-will doctrine. Plaintiff responds that this contract was not an employment contract.

Under Louisiana law, the elements of a breach of contract claim are (1) existence of a contract, (2) party's breach thereof, and (3) damages.[75] However, in the context of employment law, "[a]bsent a specific contract or agreement

---

[73] *Goings*, 2023 WL 2709826, at *11.

[74] After being given leave to amend his complaint, Plaintiff again fails to cite a single statute or provide elements of his retaliation claim. Further, even if this Court found that Plaintiff pled sufficient facts to support a plausible conspiracy, this Court finds *infra* that Plaintiff has not stated a claim under the LEDL upon which relief may be granted.

[75] Favrot v. Favrot, 68 So. 3d 1099, 1108–09 (La. Ct. App. 4th Cir. 2011) (citing 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So. 2d 426, 427 (La. Ct. App. 4th Cir. 1986); Hercules Machinery Corp. v. McElwee Bros., Inc., 2002 WL 31015598, at *9 (E.D. La. Sept. 2, 2002)).

establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge."[76] Louisiana courts analyze employee manuals and policies on a case-by-case basis to determine if they are contracts that bring the employee outside the scope of employment at-will doctrine, inquiring whether the manual's policies were a bargained for condition of employment or a unilateral expression of company policy and procedure.[77] However, "[t]here are no Louisiana cases holding that employee manuals, policies, or grievances procedures confer any contractual rights upon employees or create any exceptions to the 'employment at will' doctrine."[78]

While on one hand, Plaintiff argues in this Response to Defendant's Motion to Dismiss that the Interoffice Memo is not an "employment contract," he, on the other hand, alleged in his Amended Complaint that "consideration for the contract was 'continued employment with [Defendant Terminix].'"[79] Viewing Plaintiff's factual allegations in a light most favorable to him, if the Interoffice Memo even sets forth a contract—the first element of a breach of contract claim—that contract is one of employment.[80] This Court is not bound to accept as true Plaintiff's legal conclusion, couched as a factual allegation, that the alleged contract is not an employment contract and therefore not

---

[76] Robinson v. Healthworks Int'l, L.L.C., 837 So. 2d 714, 721 (citing Deus v. Allstate Ins. Co., 15 F.3d 506 (5th Cir. 1994); Williams v. Delta Haven, Inc., 416 So. 2d 637 (La. Ct. App. 2d Cir. 1982)).

[77] See Wallace v. Shreve Memorial Library, 79 F.3d 427, 430 (5th Cir. 1996) (quoting Leger v. Tyson Foods, Inc., 670 So. 2d 397, 401–02 (La. Ct. App. 3d Cir. 1996).

[78] Hartley v. Univ. of Holy Cross, No. 2022-CA-0840, 2023 WL 4618313, at *22 (La. Ct. App. 4th Cir. July 19, 2023) (citing Stanton v. Tulane Univ. of La., 777 So. 2d 1242, 1250 (La. Ct. App. 4th Cir. 2001); Mix v. The Univ. of New Orleans, 609 So. 2d 958, 964 (La. Ct. App. 4th Cir. 1992)).

[79] Doc. 16 at 25–26; Doc. 21 at 16.

[80] See Clark v. Christus Health N. La., 47 So. 3d 1135, 1139 (La. Ct. App. 2d Cir. 2010) (citing Vining v. Bardwell, 482 So. 2d 685 (La. Ct. App. 1st Cir. 1985), writ denied, 487 So. 2d 439 (La. 1986)) ("The essential elements of an employment contract include (1) consent, (2) giving of services in the form of labor, and (3) a fixed price.").

governed by employment at-will.[81] Because the Interoffice Memo does not create a fixed term of employment and Defendant cites no statutory exception to Louisiana employment at-will doctrine, Defendant is "at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge."[82] Thus, even viewing the facts in a light most favorable to Plaintiff, he has failed to state a plausible claim for relief as to his breach of contract claim.[83]

### iv.    Louisiana Employment Discrimination Law

In Count IX of his Amended Complaint, Plaintiff asserts that Defendant violated the LEDL by "discriminat[ing] against Plaintiff in his employment based on [his] disability."[84] Louisiana Revised Statutes § 23:323 prohibits discrimination in employment against an "otherwise qualified person with a disability" on the basis of that disability.[85] "[C]laims brought under the LEDL are analyzed using the same framework and precedent as ADA claims."[86] Thus,

---

[81] Papasan v. Allain, 478 U.S. 165, 186 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

[82] Robinson v. Healthworks Int'l, L.L.C., 837 So. 2d 714, 721 (citing Deus v. Allstate Ins. Co., 15 F.3d 506 (5th Cir. 1994); Williams v. Delta Haven, Inc., 416 So. 2d 637 (La. Ct. App. 2d Cir. 1982)). *See also* Blakemore v. Town of Grambling, 289 So. 3d 681, 687 (La. Ct. App. 2d Cir. 2020). The Interoffice Memo requires that employees either receive the COVID-19 vaccine or qualify for a provided-for exception. However, complying with the vaccine requirement does not promise continued employment with Defendant, and Plaintiff does not attempt to argue that the Interoffice Memo sets a definite term of employment to bring Plaintiff's employment outside the scope of Louisiana employment at-will doctrine.

[83] *Blakemore*, 289 So. 3d at 687.

[84] Doc. 16 at 26.

[85] LA. REV. STAT. § 23:323.

[86] Johnson v. JP Morgan Chase Bank, N.A., 293 F. supp. 3d 600, 615 (W.D. La. Monroe Div. 2018) (citing Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989); Scott v. Turner Indus. Grp., LLC, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2021) ("The ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.")). *See also* Baker v. FedEx Ground Package Sys. Inc., 278 F. App'x 322, 327 (5th Cir. 2008) ("We look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws.").

the requirement that a plaintiff plead a disability applies with equal force here.[87] Because this Court found that Plaintiff failed to plead a disability and therefore failed to state a claim of discrimination under the ADA, this Court likewise finds that Plaintiff has not adequately pled a disability under the LEDL, and his claim that Defendant violated the LEDL must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion (Doc. 18) is **GRANTED**. Plaintiff's ADA, PREP Act, LEDL discrimination, wrongful termination, retaliation, and breach of contract claims are **DISMISSED WITH PREJUDICE**. Plaintiff's Title VII claims remain pending before the Court.

New Orleans, Louisiana this 16th day of November, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[87] *See* Credeur v. La. Through Off. Of Att'y Gen., 860 F.3d 785, 791 n.3 (5th Cir. 2017) (noting that the same analysis applies to ADA and LEDL claims "because Louisiana courts look to federal employment discrimination law for guidance in interpreting the State's anti-discrimination statute").