UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS LINER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-3698 C/W 22-3701** |
| **TERMINIX PEST CONTROL, INC.** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Defendant Terminix Pest Control Inc's Motion for Judgment as a Matter or Law and Mistrial (Doc. 92). For the following reasons, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This case arises out of Plaintiffs Louis Liner's and Gregg Smith's terminations from their jobs with Defendant Terminix Pest Control, Inc. In August 2021, Defendant issued a notice to all employees that they must receive the COVID-19 vaccine as an ongoing condition of employment. This notice had exceptions, including "a disability verified by a physician that prevents you from taking the vaccine."[1] Plaintiffs contend that they told Defendant they did not want to receive the vaccine because, *inter alia*, it would violate their religious beliefs to receive a vaccine derived from aborted fetal cell lines. Both Plaintiffs allege that Defendant refused their requested accommodations without explaining how granting such accommodations would result in undue

---

[1] Doc. 16-1 at 1.

hardship to the business. Plaintiffs refused to receive the COVID-19 vaccination. Plaintiff Smith was terminated on August 25, 2021, and Plaintiff Liner was terminated on September 14, 2021.

Plaintiffs each filed suit in this Court on October 6, 2022, alleging violations of the Emergency Use Authorization Provision,[2] Title VII of the Civil Rights Act of 1964 ("Title VII"),[3] the Americans with Disabilities Act,[4] and the Louisiana Employment Discrimination Law.[5] The Court dismissed all but Plaintiffs' Title VII religious discrimination claims and consolidated their cases into the above-captioned matter.

A jury trial began on February 18, 2025. Plaintiffs, other employees of Defendant, and Plaintiffs' expert, Mr. Philip Monteleone testified during the trial. After Plaintiffs rested their case, Defendant made an oral motion for judgment as a matter of law on the issues of punitive damages, front pay, and whether Plaintiffs had violated an order of the Court by introducing evidence regarding reasonable accommodations without medical expert testimony. The Court deferred ruling on these issues.[6] The jury found Terminix liable for religious discrimination and awarded Plaintiffs backpay, compensatory, and punitive damages.

On February 24, 2025, the Court ordered the parties to file briefing regarding punitive damages. Defendant subsequently filed the instant Motion, reasserting its Motion for Judgment as a Matter of Law and moving for a mistrial. Although Defendant does not cite a Federal Rule of Civil Procedure

---

[2] 21 U.S.C. § 360bbb-3.
[3] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.
[4] 42 U.S.C. § 12101.
[5] La. Rev. Stat. § 23:301.
[6] Doc. 86.

pursuant to which it seeks a "mistrial," the Court will treat its Motion as one for a new trial. Plaintiffs oppose.[7]

## LEGAL STANDARD

### I. Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure 50, a motion for judgment as a matter of law should only be granted "if the facts and inferences point so strongly in favor of one party that reasonable minds could not disagree."[8] In deciding a Rule 50 motion, the court should "'consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.'"[9] The court "cannot assess the credibility of witnesses or weigh the evidence."[10]

### II. New Trial

Rule 59 provides that on a motion filed by a party the court may "[g]rant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[11] Rule 59(a) does not list out specific grounds for a new trial.[12] On the other hand, the Fifth Circuit has clarified that a new trial may be warranted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[13] "A new trial will not be

---

[7] Doc. 93.
[8] Gomez v. St. Jude Med. Diag Div. Inc., 442 F.3d 919, 927 (5th Cir. 2006).
[9] *Id.* (quoting Info. Commc'n Corp. v. Unisys Corp., 181 F.3d 629, 633 (5th Cir. 1999)).
[10] *Id.*
[11] Fed. R. Civ. P. 59(a)(1)(A).
[12] *See Id.*
[13] Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985).

3

granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand."[14]

## LAW AND ANALYSIS

### I. Judgment as a Matter of Law

At trial, Defendant moved for judgment as a matter of law on the issues of punitive damages, front pay, and the admissibility of medical expert testimony. In its Motion, Defendant asks for judgment as a matter of law on the jury's awards of compensatory damages and back pay. The Court will consider each issue in turn.

#### *A. Non-Economic Damages*

The jury awarded Plaintiffs punitive and compensatory damages. Each Plaintiff was awarded $200,000 in punitive damages. Liner was awarded $100,000 in compensatory damages, and Smith was awarded $75,000 in compensatory damages. At the outset, the parties acknowledge that, per 42 U.S.C. § 1981a(b)(3)(A), "[t]he sum of the amount of compensatory damages awarded under this section . . . and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—$50,000." The Court considers each award in turn.

#### i. **Punitive Damages**

First, Defendant argues that Plaintiffs are not entitled to punitive damages. Punitive damages may be awarded to plaintiffs with Title VII religious discrimination claims "in only a subset of cases involving *intentional*

---

[14] Learmonth v. Sears, Roebuck and Co., 631 F.3d 724, 730 (5th Cir. 2011) (quoting Foradori v. Harris, 523 F.3d 477, 506–07 (5th Cir. 2008)) (internal quotations omitted).

*discrimination.*'"[15] In order to succeed on a claim for punitive damages, a plaintiff must "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[16]

Even considering the evidence in a light most favorable to Plaintiffs, there was no evidence presented at trial that Defendant terminated Plaintiffs with malice or reckless indifference to their rights. The testimony at trial showed that Defendant was operating in good faith during an unprecedented global pandemic that required implementing new, potentially imperfect policies to balance their business interests and the health interests of their customers and staff. There was no evidence that Defendant maliciously targeted Plaintiffs because of their religious beliefs. "Flippant and condescending" statements made by a Terminix employee are insufficient to show the malice and reckless indifference required to justify a punitive damage award. As such, Plaintiffs failed to satisfy the high standard required to justify an award of punitive damages.[17] Accordingly, the Court grants the Motion for Judgment as a Matter of Law on this issue.

### ii. Compensatory Damages

Next, Defendant argues that Plaintiffs did not prove that they are entitled to compensatory damages for emotional distress caused by their terminations. It asserts that Liner's testimony at trial was that his stress was

---

[15] Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 404 (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534, (1999)) (emphasis added).

[16] *Id.* at 404 (citing 42 U.S.C. § 1981a).

[17] *See Kolstad*, 527 U.S. at 534 (finding that regarding 42 U.S.C. § 1981a, "Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.")

caused by starting his own business, and Smith's emotional harm was caused by the undesirable conditions of his current job.

In Title VII religious discrimination cases, compensatory damages may be awarded for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."[18] "A plaintiff's testimony may be sufficient to establish emotional distress" and therefore "may justify an award of compensatory damages."[19] "Emotional harm may be evidenced through loss of self-esteem, marital strain, sleeplessness, anxiety, stress, depression, humiliation, and other physical manifestations."[20] "An award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the plaintiff's injury."[21]

The Court finds that, viewing the evidence in a light most favorable to Plaintiffs, there was sufficient evidence presented at trial to support an award of compensatory damages to Plaintiffs. Liner testified that he was publicly humiliated and embarrassed after being fired from a company that he had for more than 14 years by a manager that he considered family. Smith testified that he wanted to retire from Terminix and had difficulty obtaining new employment because of his age. He testified that he had to settle for a job working longer hours for less money. This evidence reflected Plaintiffs' stress and loss of security as a result of their terminations, and the jury could reasonably have awarded compensatory damages for these emotional harms

That said, "[t]his circuit follows the 'maximum recovery rule' for remittitur such that the verdict must be reduced to the maximum amount

---

[18] Pattern Civ. Jury Instr. 5th Cir. 11.4 (2020).
[19] Dowdell v. Culpepper & Assocs. Sec. Servs., Inc., No. CV 19-11410, 2020 WL 13669028, at *17 (E.D. La. Nov. 17, 2020) (Morgan, J.) (internal citations omitted).
[20] *Id.* (citing EEOC Enforcement Guidance on Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991, No. 915.002 (July 14, 1992)).
[21] *Id.* (citing Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977)).

that the jury could properly have awarded."[22] As such, per 42 U.S.C. § 1981a(b)(3)(A), Plaintiffs can only recover a maximum of $50,000 in punitive and compensatory damages. Accordingly, Defendant's Motion for Judgment as a Matter of Law is granted in part, and the compensatory damages awards for Plaintiffs Liner and Smith are reduced to $50,000 each.

### B. Economic Damages

Next, the Court considers Defendant's Motion for Judgment as a Matter of Law on the issues of front and back pay. "A successful plaintiff may recover front and back pay as compensation for wages and other benefits lost due to an employers' violation of Title VII."[23] "Front and back pay are equitable remedies meant to restore plaintiffs to the position they would have been in but for the violation."[24] "These equitable remedies are awarded by the district court, not by a jury."[25] "[W]hile the Court may choose to ask the jury to make advisory findings with respect to these remedies, the district court retains discretion to reject the jury's determinations as to back pay and front pay without running afoul of the Seventh Amendment."[26]

### i. Back Pay

"Back pay compensates a plaintiff for losses suffered between the time of the wrongdoing and the date of final judgment."[27] "While the district court need not award back pay in all circumstances, the remedial purposes of Title VII

---

[22] Faulk v. Duplantis, No. CIV.A. 12-1714, 2014 WL 7006002, at *1 (E.D. La. Dec. 10, 2014) (citing Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 177–78 (5th Cir. 1992)).
[23] Muslow v. Bd. of Supervisors of Louisiana State Univ., & Agric. & Mech. Coll., No. CV 19-11793, 2024 WL 5246605, at *12 (E.D. La. Dec. 30, 2024) (citing 29 U.S.C. § 216(b); 42 U.S.C. § 2000e-5(g)(1)).
[24] Id.
[25] Badgerow v. REJ Props., Inc., No. CV 17-9492, 2021 WL 1582219, at *3 (E.D. La. Feb. 24, 2021)
[26] Id. (citing Black v. Pan Am. Labs., LLC, 646 F.3d 254, 263 (5th Cir. 2011) (back pay); Rutherford v. Harris Cty., 197 F.3d, 173, 188 (5th Cir. 1999) (front pay)).
[27] Muslow, 2024 WL 5246605, at *12.

command that it be awarded in all but 'special' circumstances."[28] As such, "[t]he district court's discretion to deny back pay is narrow."[29] Still, pursuant to 42 U.S.C. § 2000e-5(g)(1), there is "a statutorily imposed duty for the Title VII plaintiff to mitigate [his] damages."[30] "In order to calculate backpay '[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'"[31] A defendant has "the burden of proof of proving payment of backpay should be negated or mitigated."[32]

The jury awarded economic damages for back pay to Smith in the amount of $35,000 and Liner in the amount of $75,000. Defendant asserts that Plaintiffs are not entitled to back pay because of issues with the calculations of their forensic accounting expert, Mr. Monteleone. Mr. Monteleone testified that he reviewed Plaintiffs' dates of birth and tax returns to "annualize historical earnings" up to their respective dates of termination. Mr. Monteleone testified that what is most important for "W-2 earners" like Smith and Liner is what they made the year of their termination. As such, for Plaintiffs, Mr. Monteleone looked at how much they each made in 2021 per the wage listed on their W-2 forms and "annualized it" by taking the number of days that Plaintiffs each worked at Terminix and dividing it by the number of days in a year. To this figure, Mr. Monteleone added a growth rate based on inflation that increased each year.[33] From this figure, he deducted "mitigating

---

[28] *Badgerow*, 2021 WL 1582219, at *3 (E.D. La. Feb. 24, 2021) (quoting Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608, 631 (5th Cir. 1983)).
[29] *Id.*
[30] *Id.*
[31] *Dowdell*, 2020 WL 13669028, at *17 (Morgan, J.) (quoting 42 U.S.C. § 2000e-5(g)).
[32] *Id.*
[33] While the Court agrees with Defendant that Mr. Monteleone's methodology is not narrowly tailored to track the variability that may come with calculating back pay for commission-based employees versus salaried ones, it is not for this Court to offer an alternative method, nor was the trial or the instant Motion the appropriate time for Defendant to raise issues

earnings" from what they may have made in their new jobs to offset what they would have earned in their previous one. Using this method, Mr. Monteleone concluded that Smith was owed $52,554 and Liner was owed $161,382 in back pay.[34] Defendant avers that Mr. Monteleone's method of increasing Plaintiffs' wages for inflation each year does not properly account for the fact that Terminix employees like Plaintiffs are compensated based on commission. Plaintiffs respond that this argument was presented to the jury, which ultimately decided to award each Plaintiff less back pay than Mr. Monteleone had calculated, suggesting they factored this argument into their award.

Before deliberating, the jury was charged with the following regarding the issue of back pay:

> Back pay includes the amounts the evidence shows Plaintiff would have earned had he remained an employee of Defendant Terminix. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits Defendant Terminix proves by a preponderance of the evidence Plaintiff received during the period in question.[35]

Presumably, the jury reduced Mr. Monteleone's figures based on other evidence and expert testimony presented at trial. The Court finds the amount awarded reasonable taking Mr. Monteleone's calculations, and the criticisms thereof, into consideration. Defendant has not presented any other basis for

---

with Mr. Monteleone's methodology. This includes Defendant's reference to Mr. Monteleone's failure to include 2024 wages in his calculation even though such figures were allegedly available to him. Doc. 92-1 at 4. The Court finds that Mr. Monteleone's testimony that the best way to determine what someone would have earned in the future is to look at what they made in the past, is the best available method here. See *Dowdell*, 2020 WL 13669028, at *17 (using a comparable method to calculate back pay for a nail technician whose income was variable because it was based on the number of clients she had any given week).

[34] Because these cases were consolidated after initially being set for separate dates, Mr. Monteleone testified that he used a February 18, 2025 date when calculating Smith's earnings, but a January 27, 2025 for Liner's.

[35] Liner v. Terminix, Final Jury Charge, at 9 (E.D. La. Feb. 20, 2025).

reducing the back pay award. Accordingly, the Court gives deference to the findings of the jury. Liner shall be awarded back pay in the amount of $75,000, and Smith shall be awarded back pay in the amount of $35,000.

### ii. Front Pay

In the instant Motion, Defendant argues that front pay should not be awarded to Plaintiffs because there was no evidence presented at trial that reinstatement was not feasible and all monetary damages for loss of income were speculative. "Front pay is an equitable remedy to be determined by the court at the conclusion of the jury trial."[36] The Court did not present the issue of front pay to the jury for an advisory verdict. "An award of front pay is intended to compensate the plaintiff for wages and benefits [he] would have received from [his] employer in the future if not for the discrimination."[37] "Front pay is available only in limited circumstances."[38] "Front pay covers monetary damages for future lost wages and benefits. Front pay is awarded only when reinstatement is not feasible because a hostile relationship exists between the employer and employee."[39] "In situations where 'discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy,' a court may consider an award of front pay in lieu of reinstatement."[40]

Plaintiffs do not argue a hostile work environment makes reinstatement impossible, rather, they argue that reinstatement is not possible where Defendant's company policy requiring vaccination remains in place. However, there was no evidence at trial regarding the current state of Defendant's policy.

---

[36] Pattern Civ. Jury Instr. 5th Cir. 11.14 (2024).
[37] *Dowdell*, 2020 WL 13669028, at *18 (Morgan, J.) (citing Tyler v. Union Oil Co. of California, 304 F.3d 379, 402 (5th Cir. 2002)).
[38] *Id.*
[39] Pattern Civ. Jury Instr. 5th Cir. 11.14 (2024).
[40] Tucker v. Hous. Auth. of Birmingham Dist., 507 F.Supp.2d 1240, 1281 (N.D. Ala. 2006)

The Court is therefore left to speculate whether Defendant's vaccine mandate is still a requirement. This Court declines to do so. Accordingly, Plaintiffs have not shown that reinstatement is not feasible.

Further, Plaintiffs did not present evidence that front pay would be necessary to make them whole and did not provide sufficient evidence for the Court to determine a reasonably certain amount of front pay owed. Plaintiffs bear "the initial burden of proof in establishing a claim for front pay by providing the district court with the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff expect[ed] to work for the defendant, and the applicable discount rate."[41] If, as here, "a plaintiff fails to supply the Court with the information necessary to calculate a reasonably certain award, the Court may reject the plaintiff's front pay request."[42] Plaintiffs have not met their burden of proving they are entitled to front pay. In addition, the evidence at trial revealed that Plaintiffs ultimately found successful post-termination employment earning as much or more than they did working for Defendant.[43] Indeed, Mr. Monteleone reported an annual increase in income for Liner whose business is growing rapidly. Accordingly, Plaintiffs have not shown that they are entitled to front pay, and none will be awarded.

### C. Medical Evidence

In an unopposed motion in limine filed prior to trial, Defendant moved this Court to prevent Plaintiffs from introducing medical expert testimony that

---

[41] *Id.* (internal quotations and citations omitted).
[42] *Id.* (internal quotations and citations omitted).
[43] *See Badgerow*, 2021 WL 1582219, at *5 ("Given that Badgerow was able to obtain new employment in her chosen field almost immediately after WMT fired her, and given the more lucrative nature of her post-termination employment, the Court would be hard-pressed to conclude that in 2021 an award of front pay would be necessary or appropriate to ameliorate any present effects of past discrimination.").

would otherwise be subject to Federal Rules of Evidence 702 and 703 with respect to the COVID-19 vaccine and any potential accommodations, arguing that it could only be provided by a medical expert. The Court granted the motion because Plaintiffs had not identified any expert.[44] Now, Defendant argues that despite this Order, "Plaintiffs introduced testimony that the masking, hand washing, and other PPE measures were effective alternatives to the vaccine."[45] Defendant claims that there was no way the jury could reach the conclusion that it "could offer a reasonable accommodation" without considering this inadmissible testimony.[46]

The Court finds that Plaintiffs did not offer testimony or argument in violation of the Court's order. The testimony at trial was that Plaintiffs used masking, handwashing, and social distancing at their jobs in response to the spread of COVID-19 and that those measures apparently kept them from getting sick. This fact evidence is not the sort of medical expert testimony intended to be excluded by this Court's Order. Plaintiffs did not testify and their counsel did not argue that masking, handwashing, or social distancing were as effective as the vaccine. The Court finds that Plaintiffs' counsel adequately stayed within the bounds of its Order, and that Defendant had the opportunity to object to any material it felt was in violation of it during trial.

## II.  Motion for New Trial

Finally, Defendant moves for new trial, citing (1) Plaintiffs' alleged violation of the Court's Order prohibiting the presentation of medical evidence requiring an expert, and (2) improper communication in the jury deliberation

---

[44] Doc. 79.
[45] Doc. 92-1 at 6.
[46] *Id.*

12

room. "In civil cases, a mistrial may be declared when a litigant is denied the right to a fair trial."[47]

First, Defendant contends that this Court admonished Plaintiffs' counsel that it could not argue that the use of personal protective equipment was effective against contracting COVID-19 for Plaintiffs and that Plaintiffs' counsel did so anyway in his closing argument. "When considering whether conduct by counsel resulted in the denial of a fair trial, this Court examines the entire argument made by counsel 'within the context of the court's rulings on objections, the jury charge, and any corrective measures.'"[48] "Alleged improprieties may well be cured by an admonition or charge to the jury."[49] "A motion for new trial premised on improper arguments by counsel should only be granted when improper . . . argument irreparably prejudices a jury verdict or if a jury fails to follow instructions."[50] The Court finds that Defendant has not shown that the instances of inappropriate commentary irreparably prejudiced the jury's verdict.[51] Further, Defendant did not object during or after the argument and did not request a limiting instruction. The Court denies its Motion for New Trial based on this argument.

Next, Defendant argues that the court security officer's ("CSO") communications with the jury may have rushed them into returning a verdict. Specifically, Defendant vaguely claims that its counsel overheard discussions between the CSO and the Court's case manager that suggested that "at a certain point the jury was deadlocked and court's security officer made

---

[47] 1 KEVIN O'MALLEY ET AL., FED. JURY PRAC. & INSTR. § 5:21 (6th ed. 2025).
[48] Marine Power Holding, L.L.C. v. Malibu Boats, LLC, No. CV 14-912, 2016 WL 7241560, at *7 (E.D. La. Dec. 15, 2016) (Africk, J.) (quoting *Learmonth*, 631 F.3d at 731)).
[49] *Learmonth*, 631 F.3d at 731
[50] Baisden v. I'm Ready Productions, Inc., 693 F.3d 491, 509 (5th Cir. 2012).
[51] *See Marine Power Holding, L.L.C.*, 2016 WL 7241560, at *8. (ruling that "[t]he Court will not grant a new trial based on a waived argument for which no prejudice can be shown.")

substantive remarks that may have rushed the jurors into returning a verdict."[52] In light of this accusation, the Court held separate, informal interviews with the CSO that was responsible for the jury during the trial and the Court's case manager. Both parties individually described the same series of events: that throughout the trial, the CSO would relay non-legal questions from the jury to the case manager, including inquiries about whether they were permitted to have their cell phones or whether they can leave at all during deliberations. As deliberations continued into the afternoon, the jury asked what would happen if it did not reach a verdict by the end of the workday, but the jury reached a verdict at 5:00 p.m. The Court finds that the conversations between the jury and the CSO and between the CSO and the case manager were standard interactions regarding the deliberative process. Further, Defendant's implication that the damages calculation was rushed is belied by the fact that the jury sent out a question regarding Plaintiffs' lost wage statements almost four hours before reaching a verdict. As such, the Court finds no basis for Defendant's accusation that the jury was rushed or pressured. Accordingly, the Court does not find that a new trial is warranted.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law and Mistrial is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS ORDERED** that Plaintiff Gregg Smith is entitled to $50,000 in compensatory damages and $35,000 in back pay.

**IT IS FURTHER ORDERED** that Plaintiff Louis Liner is entitled to $50,000 in compensatory damages, and $75,000 in back pay.

---

[52] Doc. 92-1

Pre-judgment interest is awarded on compensatory damages from the date of Plaintiff's termination to the date of judgment, calculated using the Federal Reserve Bank's prime rate, and compounded on an annual basis.

Pre-judgment interest is awarded on Liner's back pay damages from the date of termination to December 31, 2021, calculated using the Federal Reserve Bank's prime rate, and compounded on an annual basis.

Post-judgment interest is awarded from the date of judgment until paid at the rate set forth in 28 U.S.C. § 1961.

The Court awards Plaintiff reasonable attorneys' fees and expert witness fees in an amount to be determined by the assigned Magistrate Judge. Plaintiff shall file a motion for determination of attorneys' fees and expert witness fees with supporting documentation, by no later than 14 days from the date of this Order.

New Orleans, Louisiana this 15th day of July, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**