**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LOUIS LINER** | **CIVIL ACTION** |
| **VERSUS** | **NO:   22-03698 and  22-3701** |
| **TERMINIX PEST CONTROL, INC.** | **SECTION: "H" (4)** |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiffs' **Motion for Determination of Attorney's Fees and Expert Expenses (R. Doc. 97)**. On July 15, 2025, the District Court determined that the Plaintiffs were entitled to recover reasonable attorneys' fees and expert witness fees in an amount to be determined by the assigned Magistrate Judge. The Plaintiffs have complied with the District Judge's Order and timely filed the subject motion.

I.    **Background**

On October 6, 2022, Plaintiffs commenced separate Title VII religious discrimination actions against Defendant Terminix Pest Control, Inc. R. Doc. 1. Two years later, on October 9, 2024, the two actions were consolidated under *Liner v. Terminix Pest Control*, 2:22-cv-3698 (R. Doc. 37), and the jury returned a verdict in favor of the Plaintiffs for a combined total of $795,000. *See* R. Doc. 89, 90.

On March 5, 2025, Terminix filed a Motion for Judgment as a Matter of Law and Mistrial. R. Doc. 92. On July 15, 2025, Judge Jane Triche Milazzo issued an Order and Reasons. R. Doc. 94. The Judge granted in part and denied in part the Motion for Judgment as a Matter of Law. R. Doc. 95.

Judge Milazzo denied a mistrial and entered judgment in favor of Louis Liner for $125,000 and Gregg Smith for $85,000, after setting aside punitive damages and reducing the compensatory damages award to the Title VII cap on compensatory damages of $50,000.  R. Doc. 95 at 14.

In addition, Judge Milazzo awarded Plaintiffs attorney's fees and expert expenses as follows:

> The Court awards Plaintiff reasonable attorneys' fees and expert witness fees in an amount to be determined by the assigned Magistrate Judge. Plaintiff shall file a motion for determination of attorneys' fees and expert witness fees with supporting documentation, by no later than 14 days from the date of this Order. R. Doc. 94 at 15.

Now, Plaintiffs submit a fee request for $158,925.00 in attorneys' fees and $21,290.00 expert expenses totaling $180,215.00.

The motion is opposed. R. Doc. 102. The Defendant does not dispute that fees should be awarded but requests that the Court significantly reduce attorney's fees and expert fees as requested by Plaintiffs. *Id.* at 1. Defendant particularly contends that Plaintiffs should not be entitled to expert fees at all. *Id.* at 12.

## II.    Standard of Review

The Supreme Court has specified that the "lodestar" calculation is the "most useful starting point" for determining the award for attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Lodestar is computed by "… the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar calculation, "...provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* Once the lodestar has been determined, the district court must consider the weight and applicability of the twelve factors delineated in *Johnson*. *See Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Subsequently, if the Johnson factors warrant an adjustment, the court may make modifications upward or downward to the lodestar. *Id.*  However, the lodestar is presumed to be a reasonable

calculation and should be modified only in exceptional circumstances. *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting "adequate documentation of the hours reasonably expended" and demonstrating the use of billing judgement. *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997)).

### III.   Analysis

#### A.  Attorney Fees

Louis Liner and Greg Smith seek to recover fees for its attorney David J. Schexnaydre. R. Doc. 97. In support of Schexnaydre's hourly rate, his Affidavit states that he has been admitted to practice law since 1991. R. Doc. 97-6 at 1. He also verifies that he has more than twelve years of experience in handling vaccine injury cases and is one of the nation's leading vaccine mandate attorneys. *Id.* He additionally attests that he is representing over 600 plaintiffs in eleven district courts and six federal appeals circuits. *Id.* Likewise, Schexnaydre states that he is a member of Freedom Counsel, a nationwide organization of civil rights lawyers. *Id.*

Plaintiffs' counsel further contends that he seeks payment only for work that was necessary to winning the Title VII claim.  R. Doc. 97-1 at 4. Counsel contends that some of his work on the dismissed claims were inextricably intertwined, both factually and legally, with the Title VII claim and should be included in the fee award. *Id.* To the extent that his work pertained solely to the dismissed claims and did not support the Title VII claim, Plaintiffs' counsel contends that he removed those charges from his billing record. *Id.*

However, the Defendant contends that while the Plaintiffs are entitled to a fee award, the invoices submitted by their counsel suggests that a reduction is appropriate because (1) the application shows errors in the exercise of billing judgment, (2) it includes fees for work performed on dismissed claims, (3) several entries are vague and not applicable to the present case, and (4) several entries are excessive and/or duplicative. *See* R. Doc. 102.

### i.        Reasonable Hourly Rate

Schexnaydre contends that his rate is $375 per hour, which he claims is $100 less than what he usually charges in vaccine injury cases. R. Doc. 97-1 at 6. Notably, the Defendant does not challenge the reasonableness of this rate given Schexnaydre's years of experience. Instead, it only challenges the reasonableness of the hours billed.

The "appropriate hourly rate. . .is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir.2012)). Specifically, the rate must be calculated "at the 'prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.'" *Int'l Transp. Workers Fed'n v. Mi-Das Line, SA*, 13–00454, 2013 WL 5329873, at *3 (E.D. La. Sept. 20, 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. When the attorney's rate is uncontested, it is prima facie reasonable. *See Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989).

Similar to *Powell*, because the Defendant does not challenge the Plaintiffs' attorney's rate, it is *prima facie reasonable*. Therefore, the Court finds that the rate of $375.00 is a reasonable rate considering counsel's background and years of experience.

### ii.    Hours Reasonably Spent on Litigation

Plaintiffs contend that they seek to recover attorney's fees totaling $180,215.00 in attorney's fees. R. Doc. 97-1 at 6. He contends that he billed 427.50 hours on two cases combined. *Id.* Plaintiffs' counsel also contends that all of the work he performed was reasonable and necessary for getting the Plaintiffs' claim investigated, discovered, prepared for trial, and tried. *Id.*

The Defendant contends that the lodestar should determine an award for fees and that Plaintiffs bear the burden of establishing the reasonableness of the fee sought. R. Doc. 102 at 1. The Defendant argues that the Plaintiffs' fee request should be reduced because (1) there are errors in counsels billing judgment, (2) there are numerous block billing entries in the invoices; (3) the invoices contain entries that are vague and not applicable to the case; and (4) the invoices contain entries that are excessive and duplicative. *Id.*

Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008); *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir.1996). The party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir.1987). Hours that are not properly billed to one's client are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434, 103 S. Ct. 1933. The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude

hours that were not reasonably expended. *Id.* Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir.2002).

As an initial matter, the hours which the plaintiffs seek to recover at a rate of $375.00 per hour totals $158,925.00, not $180,215.00 as claimed on page 6 of Plaintiffs' supporting memorandum.[1] R. Doc. 97-1 at 1,6. Also included in the fee application is an invoice for a vaccine injury case that is partially redacted. *See* R. Doc. 97-5, Exhibit D, Invoice #11809. The invoice contains 6.5 billing hours at a rate of $475.00 per hour for a total of $3,087.50. It is unclear who the client is or whether the invoice relates to the case at all. The subject case involved religious discrimination and not vaccine injury as stated on the invoice. Further, the rate in Invoice #11809 does not match the rate that Schexnaydre is requesting in this case, which is $375.00. For these reasons, the invoice does not appear to be for the subject case and is therefore excluded.

### iii.    Block Billed Hours

The Defendant contends that $22,237.50 of the entries which total 60.5 hours are block billed and should be reduced.[2] R. Doc. 102 at 2. The Defendant contends that multiple entries range from October 31, 2024, to February 16, 2025. *Id.* at 2-3. As a result, the Defendant

---

[1] The Court notes a discrepancy where Plaintiffs stated the total attorney's fee was $180,215.00 instead of $158,925.00 on page 6 of their supporting memorandum. R. Doc. 97-1 at 6. However, the Plaintiffs noted $180,215.00 includes both the attorney's fees and expert expenses on page 1. The Court therefore concludes that the $180,215.00 referenced as the total attorney fee amount on pg. 6 is a typographical error.

The Court further notes that the $375.00 rate x the 427.50 hours spent on the case actually totals $160,312.50 instead of $158,925.00. However, a review of the record reveals that Plaintiffs' counsel billed some entries at a rate of $250.00 and at $0. Those entries will be addressed further in the Order.

[2] Invoices: 10/31/24, 10/31/24, 11/01/24, 11/09/24, 11/12/24, 2/9/25, 2/10/25, 2/12/25, 2/13/25, 2/15/25, 2/16/25. R. Doc. 102 at 2-3.

contends that the time for these entries should be reduced using a specific percentage to be determined by the Court. *Id.*

Plaintiffs contend that his block billed entries should not be reduced because the majority of the contested entries are for a single activity described in detail.  R. Doc. 103. At 1. According to Plaintiffs' counsel, the entries are for trial preparation or for drafting witness and exhibit lists. *Id.* He additionally contends that those entries are not block billing because they involve the same process of reviewing the entire file and listing witnesses and exhibits as the file is reviewed. *Id.* at 2. Plaintiffs' counsel further contends that rather than separately review the file to prepare each list, he reviewed the documents once. *Id.* He contends that billing them separately would amount to double billing. *Id.* For these reasons, Plaintiffs' counsel contends that the entries from October 31, 2024, and November 1, 2024, do not qualify as block billing. *Id.*

Plaintiffs further contest the characterization of the entries for February 9, 10, 13, 15 and 16, 2025. R. Doc. 103 at 2. Plaintiffs suggest that these entries simply add detail to the trial preparation activity.  *Id.*  Plaintiffs maintain that these entries were detailed to avoid an objection of vague if it lacked sufficient detail. *Id.*  Therefore, Plaintiffs contend that these entries should not be discounted as well. *Id.*

Plaintiffs do concede that one entry challenged by the Defendant could be characterized as a block billed entry, November 12, 2024.  R. Doc. 103 at 2.  Plaintiffs' counsel notes that he billed 4.0 hours for finalizing an opposition to the Defendant's motion for summary judgment, cross motion for summary judgment, and opposition to motion to compel. *Id.* As such, he contends that 2.0 of the 4.0 hours should be billed, and that this entry constitutes less than 1% of the total. *Id.*

A court may reduce the number of hours used in a lodestar calculation as a result of block billing. *See Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 (S.D. Tex. 2011). However, "[a] reduction for block billing is not automatic." *Id.* at 864 (citing *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2021). The practice of block-billing is particularly disfavored when the block-billed entries correspond to motions to compel. *See Drs. Le & Mui, Family Med. v. St. Paul Travelers*, No. 06-10015, 2007 WL 4547491, at *5 (E.D. La. Dec. 19, 2007); *Engeron v. Fid. Nat'l Ins. Co.*, No. 06-06618, 2008 U.S. Dist. LEXIS 129348, at *8-9 (E.D. La. Apr. 23, 2008). Fifth Circuit courts typically reduce the block billing awards instead of removing the entire award. *See*, e.g., *Humphrey*, 802 F. Supp. 2d at 864 (finding a 5% reduction in attorney fees appropriate for block billing).

In reviewing the entries challenged by defense counsel as block billed, the Court finds that each of the entries are examples of classic block billed entries. By way of example, Plaintiffs' counsel has two entries for October 31, 2024 for 3.60 hours each claimant (7.20 hours total), for drafting the witness and exhibit lists and speaking with both clients.[3] R. Doc. 97-4 at 6. As written, it is impossible for the Court to determine how much time he spent speaking to each client as compared to drafting either the witness or exhibit list and notably only one witness and exhibit list is in the record.

Further, the court notes that Plaintiffs' counsel billed an additional 2.0 hours to "review, revise, finalize, and file witness & exhibit list." R. Doc. 97-4 at 6. A total of 9.20 hours for these

---

[3] The Court notes that for October 31, 2024, one entry is billed at $375.00 per hour, and the other entry is billed at $250.00 per hour. R. Doc. 97-4 at 6. As such, it appears that he also charged each client for the same task despite the case being consolidated on October 9, 2024. R. Doc. 37.

tasks seem excessive as the document only contains seventeen witnesses and 23 exhibits within five pages.  R. Doc. 39.

For these reasons, the total hours billed containing block billed entries is 60.5 hours will be reduced by 25% or to 45.37 hours. The Court notes that one entry is billed at $250.00 an hour, while the rest of the entries are billed at $375.00. Accordingly, the total amount that Plaintiffs' counsel is awarded amounts to $16,678.13.

### iv.    Work on Unsuccessful Claims

Next, the Defendant contends that the Plaintiffs are seeking fees for work performed on claims that were dismissed. R. Doc. 102 at 4. Defendant disputes a total of 18.1 hours for Smith (11.3 hrs.) and Liner (6.8) hours that stemmed from work mainly surrounding Defendant's motions to dismiss.[4] *See id* at 4-6. Defendant notes that while the courts have found that fees for unsuccessful claims can be recovered, it is only appropriate when they are inextricably intertwined. *Id.* at 4.  However, Defendant suggests in this case the work performed on the unsuccessful claims were discrete and can be separated, and therefore the hours billed should be excluded. *Id.*

In contrast, Plaintiffs claim that fees for their dismissed ADA and Louisiana state law claims should not be dismissed because they were closely intertwined with the successful Title VII claim. R. Doc. 103 at 3. Plaintiffs contend that all of the claims arose from the same set of facts and that Plaintiffs' counsel had to conduct research on the ADA claim elements and draft oppositions to the motions to dismiss. *Id.* Plaintiffs suggest that the remaining entries reflect the work that "contributed to the ultimate success on the Title VII claim." *Id.*

---

[4] Smith Invoice: 10/4/22, 01/11/23, 1/16/23, 1/17/23, 1/18/23, 1/19/23, 1/19/23, 1/23/23, 1/23/23, 8/16/23. R. Doc. 102. at 4-5. Liner Invoice: 10/4/22, 1/17/23, 1/18/23, 1/18/ 23, 1/19/23, 1/20/23, 1/23/23, 8/16/23. *Id.*

In deciding the amount of attorneys' fees to which the prevailing party is reasonably entitled, the Supreme Court has said that "the result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Thus, the degree of success determines the extent to which the claimant may recover attorney fees, such that for "excellent results," a plaintiff should recover for his or her counsel "a fully compensatory fee," but for partial or limited success, fees based on the product of the hours reasonably expended on the litigation as a whole and a reasonable hourly rate "may be an excessive amount." *Hensley*, 461 U.S. at 435–36, 103 S. Ct. at 1940–41. As such, under the lodestar method, the district court multiplies the number of hours reasonably expended by the relevant market rate for legal services, then reduces the amount for partial success, if necessary. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986).

The record shows before the cases were consolidated, the Defendant filed its first Motion to Dismiss both lawsuits claiming that Liner and Smith failed to demonstrate a connection between their religious beliefs and termination or support an inference that Defendant's alleged hostility toward their belief was a motivating factor for their termination. R. Doc. 5-1 at 6. The Defendant also challenged the cause of action brought under the Emergency Use Statute which authorized the Secretary of Health and Human Services to introduce a drug intended for use in the event of an emergency. *Id.* at 4. The Defendant specifically alleged that the requirements of the statute did not apply to the action of private employers and therefore rendered the Court without subject matter jurisdiction. *Id.* Lastly, Defendant claimed that Plaintiffs' state law claims should have been dismissed because they failed to plead viable federal claims before the Court to establish federal original jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* at 9.

10

The Court first finds that the ADA claims were not intertwined. Judge Milazzo in her opinion to the first motion to dismiss provided the following language:

> Plaintiff's Complaint does not allege that he has any blood clotting disorder or myocarditis, only that he has the potential to develop these conditions based on his family history. Regardless of whether Plaintiff's family history of blood clotting and myocarditis constitutes a physical impairment, the Court finds that the inability to take certain medications and vaccinations is not a major life activity akin to speaking, breathing, seeing, or hearing. Viewing all facts in the light most favorable to Plaintiff, the Court finds that he does not plead the necessary facts to show that he has a disability under the ADA. As such, Plaintiff's ADA claim fails. R. Doc. 15 at 6.

Next, the Court notes that Judge Milazzo declined to dismiss the Plaintiffs' Louisiana law claims in the first motion to dismiss and maintained Supplemental Jurisdiction because the Court did not dismiss the Title VII religious discrimination claim. R. Doc. 15 at 8.  However, the state law claims were premised on other theories besides religion, and the District Court eventually dismissed those claims in Defendant's second motion to dismiss. R. Doc. 25 at 19. Therefore, the Court finds that the state law claims were also not inextricably intertwined.

Regarding the Plaintiffs' claim pursuant to the Emergency Use Statute, the Court finds that it was not sufficiently intertwined as well. Judge Milazzo's opinion gives guidance in this determination as she stated:

> The Court disagrees with this characterization of the law. This statute authorizes the Secretary of Health and Human Services to approve medical products for use in an emergency and "requires the Secretary to ensure product recipients understand the 'potential benefits and risks of use' and 'the option to accept or refuse administration of the product.'" This statute gives the Secretary of Health and Human Services power to act in an emergency. It does not confer a private right to sue. Indeed, the Fifth Circuit has confirmed that this provision "neither expands nor restricts the responsibilities of private employers; in fact, it does not apply at all to private employers . . . It does not confer a private opportunity to sue the government, employer, or worker.  Thus, Plaintiff's claim under the Emergency Use Statute does not have merit and must be dismissed. R. Doc. 15 at 4.

Therefore, each of the entries for Smith and Liner regarding the ADA, the Emergency Use Statute, and Louisiana law were not legally sound claims.  There is no question that Judge Milazzo did not think that they were related to the Plaintiffs' religious discrimination claims. As such, the 11.3 hours billed on Smith's invoice and 6.8 hours bill on Liner's invoice for a total 18.1 should be excluded.

### v.  Vague/Excessive and Duplicate Entries

Defendant next challenges entries which it contends are either excessive, duplicative and in some instances vague.[5] R. Doc. 102 at 7. The Defendant specifically disputes 11.5 hours for Smith and 32.2 hours Liner for a total of 43.7 hours. *Id.* at 7-8.

Plaintiffs contend however that these entries reflect the consolidated nature of the cases after October 9, 2025.[6]  R. Doc. 97-1 at 3. Plaintiffs contend that the post-consolidation time entries were recorded on the Liner invoice to avoid duplication and that the pre-consolidation entries on the Smith invoice reflect distinct work necessary for that case. R. Doc. 103 at 3. By example, Plaintiffs claim the October 7, 2022, entry for preparing notices of lawsuit (0.80 hours) was necessary for each case before consolidation and is not duplicative. *Id.* Similarly, Plaintiffs claim the entries for drafting emails or motions to continue were minimal (0.10 to 0.50 hours) and reflect routine case management tasks.[7] *Id.*

Plaintiffs further contend that Defendant's claim of excessiveness on the 3.20 hours spent analyzing an audio recording on September 30, 2022, ignores the critical role that this evidence

---

[5] Smith invoice 10/07/22, 01/10/22, 01/20/22, 01/23/23, 02/23/23, 02/23/23, 02/23/23, 12/10/23, 02/23/23 (actually – Year 2024), 02/23/23 (actually – Year 2024), 02/28/23 (actually – Year 2024), 02/28/23 (actually – Year 2024, 04/01/24, 04/01/24, 04/09/24, 04/09/24, 04/25/24, 06/20/24. R. Doc. 102 at 7-8. Liner's invoice- 09/30/22,10/04/22, 10/07/22, 01/10/23, 01/20/23, 01/20/23, 01/23/23, 02/23/23, 02/23/23, 02/23/23, 12/10/23, 12/10/23, 02/28/23, 04/01/24, 04/01/24, 04/25/24, 06/20/24, 09/04/24, 09/04/24, 09/07/24, 09/07/24, 10/31/24, 10/31/24, 11/01/24. *Id.*

[6] The record reflects the cases were actually consolidated on October 9, 2024. *See* R. Doc. 37.

[7] The Court notes that Plaintiffs do not pinpoint the date for these entries.

had in establishing the Title VII claims. R. Doc. 103 at 3-4. Plaintiffs also contend that the subsequent 1.30 hours on October 4, 2022, for creating a transcript and revising the lawsuit further refined this evidence for litigation. *Id.* Therefore, Plaintiffs maintain these tasks were neither excessive nor duplicative but essential to securing the favorable verdict. *Id.* at 4. Plaintiffs therefore maintain that the Court should reject Defendant's request for a percentage reduction based on these unfounded objections. *Id.*

Before addressing the entries challenged by Defendant, the Court notes a pattern where many of the entries are billed at different rates – one is billed at $250.00, and the other is billed at $375.00. Defendant raises the duplicity and excessiveness of the entries but does not otherwise challenge the discrepancy in the rates. However, where a duplicate entry is billed at $250.00, the Court will exclude that entry to ensure consistency with Plaintiffs' counsel standard rate of $375.00.

Additionally, as an initial matter, the Court notes the actual number of hours Defendant disputes totals 43.3. Defendant first challenges the September 30, 2022, and October 4, 2022, entries on Liner's Invoice billing 3.20 hours for listening to and analyzing the audio recording and revising the lawsuit. R. Doc. 102 at 9. Defendant points out that the Plaintiffs' counsel on October 4, 2022, again billed another 1.30 hours for listening to the audio recording in detail and transcribing the tapes and revising the lawsuit. *Id.*

Even though the Defendant references September 30, 2022, and October 4, 2022, the Court notes the entries actually occurred on September 26, 2022, and September 30, 2022, respectively. *See* R. Doc. 97-4 at 1. On September 26, 2022, Plaintiffs' counsel billed 0.90 hours and 3.20 hours on September 30, 2022 totaling 4.9 hours. *Id.* He also billed 0.7 hours for listening to the same recording on Smith's invoice. R. Doc. 97-3 at 1.

Given that the recordings were 36 mins total,[8] these entries seem excessive. Further, it is unclear what portion of the time was for drafting the complaint. Given that counsel billed on three separate occasions for listening to a 30-minute recording which also charges for transcribing, the Court will only allow 0.90 hours total for these tasks.

On the other hand, the October 7, 2022, entries on both Liner and Smith's invoices of 0.80 hours each cannot be said to be duplicative. R. Doc. 97-3 at 1; R. Doc. 97-4 at 1. It is undisputed that at the time of these entries the cases were not consolidated. *See* R. Doc. 37. The same is true for the January 10, 2023, entries. On that date, Plaintiffs' counsel billed .20 hours for sending separate emails to his clients. These entries are also allowable and not duplicative. R. Doc. 97-3 at 2; R. Doc. 97-4 at 2.

Regarding the entries for January 20, 2023, it indicates that there was a request to amend complaint that was prepared. R. Doc. 97-3 at 2; R. Doc. 97-4 at 2. This entry further reads that the amendment was in the subsection of law and argument section of the opposition to the Motion to Dismiss. *Id.* It seems that the entry according to the record suggests that Plaintiffs' counsel continued to work on the draft opposition and added a section requesting an opportunity to amend the complaint. *See id*. The Court notes that the same opposition was filed for both Liner and Smith, yet Plaintiffs" counsel billed twice for the same work .60 hrs. (Smith) and .60 hrs. (Liner) on the same day. *See* R. Doc. 10. Therefore the .60 entry on the Liner invoice will be disallowed as excessive and/or duplicative.

On January 23, 2023, counsel for the Plaintiffs billed 0.50 hrs. on Smith's invoice for drafting the motion to continue the submission date and file the same. R. Doc. 97-3 at 2. He made the same entry for Liner for 0.50 hrs. and filed the same memorandum for both Liner and

---

[8] *See* R. Doc. 88 – P3 (8 mins), P4 (12 mins), P5 (16 mins)

Smith. R. Doc. 97-4 at 3. Given the duplicative nature of the entries, the .50 entry on the Liner invoice.

Next, the entry on February 23, 2023, Plaintiffs' counsel billed twice for drafting correspondence to opposing counsel regarding the continuance of the preliminary conference before the undersigned Judge. R. Doc. 97-3 at 2; R. Doc. 97-4 at 3. He billed .10 hrs. for Smith and .10 hrs. for Liner. *See id.* This too looks like double billing and therefore only Smith's .10 hours will be allowed.

Likewise, Plaintiffs' counsel billed twice for speaking with the undersigned's staff regarding the Plaintiffs' nonconsent on February 23, 2023. Counsel billed .10 hrs. for Smith and .20 hrs. for Liner. *See* R. Doc. 97-3 at 2; 97-4 at 3. On that same date, Plaintiffs' counsel further charged twice, .10 hrs. for Smith and .10 hrs. for Liner, for drafting a communication to the Court of their nonconsent. *Id.* These entries seem excessive as well, and the Court will only allow 0.30 hrs. All of the February 23, 2023, entries on Liner's invoice are disallowed.

Also on February 23, 2024, Plaintiffs' counsel billed twice on Smith's invoice for 0.40 hours total for drafting an email to opposing counsel regarding the depositions of Toby Cunningham and Gregg Smith. R. Doc. 97-3 at 3. The Court will only allow one entry of 0.2 hours.

On February 28, 2024, Plaintiffs' counsel billed twice on Smith's invoice for 0.60 hours total. R. Doc. 97-3 at 3. The Court finds these entries to be duplicate and will only allow 0.3 hours. The Court also notes that Plaintiffs' counsel on Liner's invoice for 0.3 hours on the same date for attending a telephone scheduling conference with the court and counsel. Because the Court initially entered different scheduling orders, the Court finds Liner's entry of 0.3 hours is allowable.

On April 1, 2024, he also billed twice on Smith's invoice for 0.40 hours and twice on Liner for 0.30 hours for reviewing and correcting the corporate disclosure statement by Terminix. *Id.* As to Liner, the Court will only allow 0.20 hours for Liner and 0.20 hours for Smith.

Additionally, on April 9, 2024, Plaintiffs' counsel billed twice on Smith's invoice for 0.40 hours total for emailing with counsel regarding the deposition of Plaintiff. R. Doc. 97-3 at 3. The Court finds these entries duplicative and will only allow 0.2 hours.

On April 25, 2024, Plaintiffs' counsel also billed 0.30 hours for Liner and 0.30 hours for Smith to attend the preliminary conference with Judge Milazzo. R. Doc. 97-3 at 3; R. Doc. 97-4 at 4. Because the conference took place at the same time with the same District Judge, the Court will exclude that 0.30 on Liner's invoice.

On June 20, 2024, Plaintiffs' counsel billed twice (Smith 1.70 hours - Liner 2.50 hours) for revising and finalizing response to the second set of RFP after research regarding discoverability in religious discrimination cases. R. Doc. 97-3 at 4; R. Doc. 97-4 at 5. The Court finds the 1.70 entry for Smith will be disallowed.

On August 14, 2024, Plaintiffs' counsel billed 0.80 hours total (0.40 for each claimant) for reviewing an email with economies expert regarding documents received from claimants. The Court will allow only 0.4 hours.

On August 16, 2024, Plaintiffs' counsel also billed twice on Smith's invoice (0.60 hours total) for a telephone conference with the client regarding the production of his tax returns and W-2 forms for the economist. The Court will only allow one entry of 0.30 hours.

On September 4, 2024, Plaintiffs' counsel billed twice (2.00 hours total) on Liner's invoice "to review emails from economist regarding need for additional documentation;

communicating with the client regarding need for 2022 and 2023 tax returns and year to date, profit and loss statements; receive documentation from client and review same; send all to economist." R. Doc. 97-4 at 6. Likewise on that date, Plaintiffs' counsel billed twice (0.40 hours total) on Smith's invoice for a telephone conference regarding the items on damages to be included in the case. R. Doc. 97-3 at 4. As to Liner, the Court will only permit 1.00 hour total. As to Smith, the Court will allow only 0.20 hours.

Moreover, on September 7, 2024, Plaintiffs' counsel billed twice (3.00 hours total) on Liner's invoice for reviewing emails from economist for additional records and contacting client regarding the need for additional records. R. Doc. 97-4 at 6. The Court will permit 1.50 hours.

Likewise, On September 23, 2024, Plaintiffs' counsel billed twice (1.00 hour total) for reviewing the draft of the expert report from economist on Smith's claim. R. Doc. 97-3 at 4. The Court will only permit one entry of 0.50 hours. Lastly, on October 31, 2024, Plaintiffs' counsel billed thrice on Liner's invoice (9.8 total) to draft witness and exhibit list and communicate with clients. R. Doc. 97-4 at 6. The Court finds the entries are duplicative. The Court finds that only 3.6 hours are allowable.

In sum, the Court finds that 24.8 hours out of the 43.3 disputed hours are allowable.

### vi.    Pleadings for Fictitious Work

Next, Court notes Plaintiffs' counsel billed twice on Liner's invoice to recover 5.00 hours on December 10, 2023, for drafting an opposition to a motion for attorney's fees. R. Doc. 97-4 at 4. Plaintiffs' counsel also billed 2.50 hrs. for the same work on Smith's invoice amounting to total for 7.5 hours. R. Doc. 97-3 at 3. A review of the docket sheet indicates that no such pleading was filed. Therefore, the Court determines the 7.5 hours will be excluded.

After evaluating Plaintiffs' request for attorney fees, the Court determines Plaintiffs' counsel is entitled to 371.47 hours at an hourly rate of $375.00, which amounts to $139,101.25. *See chart below.*

| Schexnaydre | Hourly Rate | Hours claimed | Attorneys Fee Sought | Reasonable Fee |
|---|---|---|---|---|
| | 375.00; 250.00 (10 entries totaling 8.4 hours); 0.00 (2 entries totaling 0.9 hours) | 427.50 | $158,925.00 | |
| Block billed | | -15.13[9] | | |
| Unsuccessful claims | | -18.1 | | |
| Vague/Excessive/Duplicate | | -18.5 | | |
| Pleadings for fictitious work | | -7.50 | | |
| **Total** | **375** | **368.27** | | **$138,101.25** |

## B. Expert Fees

Lastly, Plaintiffs seek to recoup the expenses for their experts and attached paid invoices to Bourgeois Bennet CPA firm, the company where its expert economist Philip Monteleone works. R. Doc. 97-1 at 2. Plaintiffs contend that Monteleone consulted on the case, performed calculations and analysis, issued an expert report, and testified at trial. *Id.* Plaintiffs contend that they paid Mr. Monteleone and his staff $21,290.00. *Id.*

---

[9] 60.5 hrs. x .25%=15.13

18

The Defendant contends that Plaintiffs should not be able to recover the expenses for their expert. R. Doc. 102 at 12. The Defendant further contends that if Plaintiffs are entitled to a fee then that fee should be significantly decreased. *Id.* The Defendant maintains that some of the expert invoices are excessive and duplicative. *Id.* at 13.

The Defendant points out that while Monteleone testified at trial that his testimony was lacking in several areas. R. Doc. 102 at 12. Defendant suggests that Monteleone's testimony had limited or no value because (1) he made up numbers for year 2024 despite the availability of paystubs, (2) as to Liner did not take into consideration that his profits for his company doubled between the first and second year, (3) he admitted that he did not take into account Liner's S Corporation and took advantage of deductions in income for tax purposes, and (4) there was a lack of any documentation establishing the necessity of Monteleone's testimony. *Id.* Finally, the Defendant argues that the work was performed by individuals other than Monteleone and Carlos Whylie, who also signed the expert report. *Id.* at 13.

Title VII has a fee-shifting provision—42 U.S.C. § 2000e-5(k)—which reads, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs...." *See Provensal v.* Gaspard, No. 10-4276, 2012 WL 4372360, at *1 (E.D. La. Sep. 24, 2012); *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (reviewing an award of attorney fees for a prevailing party under Title VII pursuant to 42 U.S.C. § 2000e-5(k)); *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (noting Title VII has a "nearly identical fee provision" as 42 U.S.C. § 1988(b)); *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 715 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron,* 489 U.S. 87 (1989) (reviewing the

reasonableness of a district court's award of attorney fees and costs pursuant to Section 706(k) of Title VII of the Civil Rights Act of 1964).

In this case, Judge Milazzo awarded attorney's fees and expert expenses as follows:

The Court awards Plaintiff reasonable attorneys' fees and expert witness fees in an amount to be determined by the assigned Magistrate Judge. Plaintiff shall file a motion for determination of attorneys' fees and expert witness fees with supporting documentation, by no later than 14 days from the date of this Order. R. Doc. 95 at 15.

As an initial matter, the Court notes the invoice contains several billers including Monteleone whose rate was $360.00 hour. The invoices as to Monteleone contain a total of 36.25 hours which would total $13,050.00. As for the other four additional people, the work that they performed may be classified as drafting of the expert report, reviewing past earnings, and calculating the diminished earnings.[10]

However, the application for a fee is devoid of any attestation from the additional billing individuals other than Mr. Monteleone and Carlos Wylie (R. Doc. 103 at 4-5), and the application was devoid of their credentials or any support for their billing rates. The invoices further show that these individuals performed largely the same work and that the entries are block billed and vague. The Court therefore finds that the billing entries for the additional employees other than Mr. Monteleone and Mr. Wylie should be excluded for the reasons assigned above.

Regarding Carlos Wylie's entries, the Defendant do not challenge the reasonableness of his entries. R. Doc. 102 at 13. The Defendant actually points out that Wylie cosigned the report

---

[10] Colin McCatharn billed 43.75 hrs. at 150.00 per hour, totaling $6, 562.50. Amanda Philips billed 26.5 hrs. at 100.00 per hour totaling $2,650.00. Carlos Wylie billed 10 hrs. at 220.00 per hour, totaling $2,200.00. Jennifer Young billed 1 hr. at 100.00 per hour, totaling $100.00. *See* R. Doc. 97-2.

and also produced his curriculum vitae. *Id.* Therefore, the 10.00 hours he billed at a rate of $220.00 per hour are reasonable for the sum of $2,200.00.

Finally, regarding the reasonableness of Monteleone's invoice, the Defendant suggests that because of his errors he should not be compensated or that the Court should reduce his fee. R. Doc. 102 at 12. The record shows that Monteleone testified under oath as an expert in the field of forensic accounting and quantification of economic damages. *See* R. Doc. 86.  The Defendant challenged Monteleone's findings during the trial and post-trial proceedings. In the Motion for Judgment as a Matter of Law (R. Doc. 95 at 9), the Court determined that the jury presumably reduced Monteleone's figures based on other evidence and expert testimony presented at trial.  The trial judge further determined that the amount awarded was reasonable taking Monteleone's calculations and criticisms in consideration. *Id.* The Court therefore finds that the $13,050.00 billed by Monteleone at a rate of 360.00 for 36.25 hours is reasonable.

In sum, the Court finds that the total expert fee of $15,250.00 is appropriate and not the $21,290.00 as claimed.

### IV.    Conclusion

Accordingly,

**IT IS RECOMMENDED** that **Plaintiff's Motion for Determination of Professional Fees and Costs (R. Doc. 97)** be **GRANTED**, and that the Plaintiffs Louis Liner and Gregg Smith be awarded reasonable attorney's fees in the amount of $138,101.25 and expert costs $15,250.00 to be paid by the Defendant Terminix Pest Control **no later than twenty-one (21) days** after the adoption of this report and recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 20th day of February 2026.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**